IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


MURRAY HILTON,

    Plaintiff,

vs.	Case No. 5:03cv166-MCR/WCS

FRANK McHUGH,
and SEYMOUR GOSS, M.D.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

An evidentiary hearing was held in this case on September 8, 2005.  The parties have filed written closing argument.  Docs. 157 and 158.  The transcript of the hearing is document 156.

**Findings of Fact**

Plaintiff arrived as a prisoner in the Florida Department of Corrections in April, 2002.  Doc. 156 (transcript), p. 20.  At that time, Plaintiff said that he had two cysts, one on his scrotum and one on the right side of his penis.  *Id*.  He also has had a history of genital herpes simplex outbreaks for over 20 years.  *Id.*, p. 24.

Between April, 2002, and September, 2003, Plaintiff reported to sick call over 90 times.  *Id.*, p. 29.  He reported a number of ailments in addition to the ones at issue in this case.  Defendant's Exhibit A (medical records).

Plaintiff testified that he has two claims.  First, he asserts that "the remaining cyst is the one that keep[s] giving me problems, and the cyst is not responding to antibiotics."  *Id.*, p. 21.  He wants all of his cysts removed.  *Id.* and p. 23.  The cysts itch, and they burn when infected.  *Id.*, p. 36.  Plaintiff's Eighth Amendment claim, therefore, concerns delays in treatment of these cysts and the need now to have all cysts removed.

Plaintiff's second claim is that the treatment he received for the herpes outbreak in December, 2002, was inadequate because it took 10 days to receive Valtrex.[1]  *Id.*, pp. 21-22.  He asserts that Defendant Dr. Goss saw him again on April 4, 2003, when he had a herpes outbreak, and delayed this medication another 10 days.[2]  *Id.*, p. 22.  These delays in treatment are the focus of the second Eighth Amendment claim.

The evidence of health care begins on May 20, 2002, shortly after Plaintiff arrived at Calhoun Correctional Institution (Calhoun CI).  Defendant Frank McHugh, Advanced Registered Nurse Practitioner (ARNP), saw Plaintiff at sickcall.  *Id.*, p. 20.  Plaintiff told McHugh that he had had a cyst on his scrotum for about seven months.  *Id.*, p. 87.  McHugh's diagnosis was a small sebaceous cyst without redness or exudate.  *Id.*  Despite the lack of evidence of infection (redness or exudate), McHugh prescribed an

---

[1] The facts of this claim were alleged in the amended complaint, doc. 8, but Plaintiff made no specific claim for relief as to treatment for herpes in December, 2002. It will be assumed that the complaint has been implicitly amended since the parties joined issue as to this at trial.

[2] The amended complaint did not allege anything at all about the treatment of herpes on April 4, 2003. Again, however, since the parties have joined issue, it will be assumed that this claim is before the court.

Case No. 5:03cv166-MCR/WCS

antibiotic, Tetracycline, Ibuprofen for pain relief, and Tinactin powder, to dry up the area and to treat fungus. *Id.*, pp. 10, 88; Def. Ex. A, p. 130 (hereafter Ex. A).

McHugh saw Plaintiff again on June 10, 2002,[3] and again found that he had cysts on his scrotum. *Id.*, p. 88. The cysts were not infected. *Id.*, p. 89. He prescribed Ibuprofen, instructed Plaintiff to use warm soaps on the area, and told him not to squeeze or mash the cysts. *Id.*

On June 20, 2002, Plaintiff was seen by McHugh with a vesicular rash on his penis consistent with herpes. *Id.*, pp. 89-90. McHugh diagnosed herpes and prescribed Valtrex. *Id.*, p. 90; Ex. A, p. 125.

On July 24, 2002, McHugh saw Plaintiff. *Id.*, p. 90; Ex. A, p. 124. McHugh observed two small cysts on his scrotum with slight drainage. *Id.* Though the cysts did not look inflamed, McHugh prescribed Tetracycline. *Id.*, p. 91.

On September 4, 2002, Plaintiff had a recurrence of herpes and McHugh prescribed Valtrex and Ibuprofen. *Id.*, p. 91; Ex. A, p. 115. The prescription for Valtrex was extended for five days on September 9, 2002, because the lesions had not yet healed. *Id.*, p. 92; Ex. A, p. 114.

On October 21, 2002, McHugh examined Plaintiff, finding a small cyst on the right side of his penis. *Id.*, p. 93; Ex. A, p. 108. Tetracycline was prescribed. *Id.*

On October 31, 2002, McHugh saw Plaintiff, finding a small sebaceous cyst on the right side of his penis, with no signs of infection (no redness, pus, or dead skin). *Id.*, pp. 93-94. No antibiotic was prescribed. *Id.*

---

[3] The question posed to McHugh used the date June 11th, but the medical records are dated June 10th. The proper date is found to be that in the written record.

Plaintiff said that the first herpes outbreak at issue in this case began on the evening of Friday, December 20, 2002.  *Id.*, p. 32.  He did not declare a medical emergency, but went to sick call on the following Monday, December 23, 2002.  *Id.*  He saw Nurse Womble, and understood that she was going to call in a prescription for the herpes outbreak at that time.  *Id.*, p. 33.  He then saw Dr. Goss on Friday, December 27, 2002, but it was beyond the time for calling in a prescription for a medication.[4]  *Id.*  He got the medication the following Monday, December 30th.  *Id.*  Plaintiff testified that the herpes outbreaks were "real painful."  *Id.*, p. 35.  He said that he got "a lot of relief" in a couple of days from the prescribed herpes medication.  *Id.*, p. 36.  At issue is the delay in receiving Valtrex for this outbreak.

McHugh was on vacation during the period December 20-29, 2002.  *Id.*, pp. 80-81.  Dr. Goss is primarily assigned to Liberty Correctional Institution, but he visits Calhoun CI once a week.  *Id.*, p. 62.

Dr. Goss was not at Calhoun CI in the period from December 20 to 26, 2002.  *Id.*, pp. 66-67.  On Monday, December 23, 2002, Plaintiff's medical records show that he was seen in sick call by Nurse D. Womble.  Ex. A, p. 94.  He said he had a herpes recurrence (among other complaints).  *Id.*  A lesion on his penis was noted.  *Id.*  He was given hydrocortisone cream.  *Id.*  Nurse Womble noted a conference with Dr. Goss

---

[4] Prescriptions are filled in the prison system more like a hospital than in private practice.  *Id.*, p. 64.  In the case of Calhoun CI, an order is written and then faxed to Washington Correctional Institution and filled, and it comes back to Calhoun CI to be given to the prisoner the evening that it returns.  *Id.*  A prescription written one afternoon is delivered to the prisoner the next evening, or on Monday evening if written on a Friday.  *Id.*, pp. 64-65.

about the "possible herpes outbreak," and Dr. Goss planned to evaluate the problem on Friday, December 27th. *Id.*

Dr. Goss said that he usually examines a patient before prescribing a medication, but in rare cases of chronic conditions, he will prescribe without seeing the patient. *Id.*, p. 65. Dr. Goss said that he did not prescribe Valtrex on December 23rd because it was already the third day of the outbreak and past the ideal time for treatment. *Id.*, pp. 70-71. He thought that Plaintiff by then should have shown signs of regression and scabbing over, and Valtrex was not effective to decrease the severity at that point or to speed the healing process. *Id.*, p. 71. Dr. Goss said that he also wanted to wait until he had examined Plaintiff. *Id.*, p. 72. He said that Valtrex has been known to cause aplastic anemia and malignant hypertension in susceptible people; he did not want to give a medication that had potential side effects that were worse than the condition to be treated, if treatment was not indicated. *Id.*, pp. 76-78.

Dr. Goss saw Plaintiff on the afternoon of Friday, December 27, 2002. *Id.*, p. 67; Ex. A, p. 93. He observed what he believed to be a "secondary infection on his penis." *Id.*, p. 69. He did not see any active herpes. *Id.* Dr. Goss ordered Doxycycline for the infection, and ordered Valtrex to prevent an outbreak of herpes, reasoning that a second infection can trigger a herpes outbreak. *Id.* Dr. Goss's testimony is somewhat contradicted by his notes on that day, however. His assessment that day was "genital herpes with a secondary infection," and he noted "penile lesions on shaft." Ex. A, p. 93. This would seem to be an assessment (diagnosis) of active herpes, though perhaps progressing toward resolution. Plaintiff received the medications on Monday, December 30th. *Id.*

On January 13, 2003, McHugh incised and drained a sebaceous cyst in Plaintiff's left groin area. *Id.*, pp. 14, 95-96; Ex. A, p. 90. He prescribed Keflex, a strong antibiotic. *Id.*, p. 96.

On March 27, 2003, Plaintiff went to sick call with blisters on his penis, and he asked for Valtrex. Ex. A, p. 84. McHugh saw him that day, but did not see any blisters. Doc. 156, p. 98; Ex. A, p. 81. He prescribed Mycolog cream. *Id.*

Plaintiff said that on April 3, 2003, another herpes outbreak began and he was seen by Dr. Goss on April 4, 2003. *Id.*, p. 34. He said that small blisters were visible on his penis. *Id.* Plaintiff testified that Dr. Goss referred him to McHugh, who saw him on April 13, 2003, and prescribed medication, Valtrex. *Id.* The delay in receipt of the medication is the focus of a second claim.

The medical records show that on April 4, 2003, Plaintiff came to sick call complaining of blisters on his penis, an outbreak of herpes. Ex. A, p. 80. Dr. Goss saw Plaintiff and his assessment was that there was no herpes as there was no evidence of herpetic lesions. *Id.*; doc. 156, p. 73. Dr. Goss referred Plaintiff to Nurse McHugh for follow-up at the next available opportunity to be sure something else was not going on. *Id.* Despite Plaintiff's testimony that he received Valtrex on April 13, 2003, there is no notation of this in his medical record. Ex. A, pp.78-80 (showing entries on April 4, 2003, and April 18, 2003).

The foregoing is the only dispute of fact in this record. It is concluded that Dr. Goss saw Plaintiff on April 4, 2003, found no active herpes, and referred Plaintiff to McHugh for followup. Plaintiff did not see McHugh on April 13, 2003, and he did not receive Valtrex then because he did not have a herpes outbreak. He was seen by

McHugh on April 18, 2003, for a cold, with no mention of herpes or Valtrex. Ex. A, pp. 78-79.

On June 4, 2003, McHugh saw Plaintiff and found that he had "a chronically infected cyst on the dorsum of his penile shaft," the same one that had been incised in January. *Id.*, p. 98; Ex. A, p. 67. McHugh removed the cyst on June 5, 2003. *Id.* He prescribed Septra DS and Bacitracin ointment. *Id.*, p. 99. This occurred after conservative treatment had been unsuccessful. *Id.*, p. 15. There was some post-operative infection noted on June 6, 2003, but in the next few weeks that had cleared up. *Id.*, pp. 100-105.

McHugh testified generally that Plaintiff had multiple recurring cysts on his scrotum, that would come and go. *Id.*, p. 16. He said that in his medical opinion, "if a sebaceous cyst is not infected and not causing serious problems, the best thing to do is leave it alone." *Id.*

Dr. Goss testified that his normal treatment for sebaceous cysts is hot compresses and Ibuprofen, and if that does not work, then a course of antibiotics. *Id.*, p. 74. He said that he has never had to excise one. *Id.* In Dr. Goss's opinion, there was no need for a specialty medical consultation for Plaintiff's herpes or for his sebaceous cysts. *Id.*, p. 75.

Scott Sellinger, M.D., testified as an expert witness for Defendants. He is a medical doctor specializing in urology. Doc. 156, p. 39. He has treated over 100 patients for sebaceous cysts and 50 to 100 patients for herpes. *Id.*, p. 42.

Dr. Sellinger testified that a:

> [s]ebaceous cyst is a skin condition that can actually occur anywhere on the skin.  It's not necessarily limited to the scrotal area. . . .  [T]heir skin structure is limited to the skin itself, not any deeper to the skin.  They don't penetrate into the muscle layer or into the internal structures, and they can be of any size, anywhere from one or two millimeters to as big as four or five centimeters, which is about two inches in size.
>
> \*         \*         \*
>
> [The cysts] have a cheesy like material . . . that is contained within the wall of [the] cyst.  And it's not pus, not infection, it's just byproducts of the breakdown of the cyst wall.

*Id.*, p. 45.

Dr. Sellinger said that the "medically acceptable course of treatment" for non-infected sebaceous cysts is "typically observation" because in most cases such cysts are simply a "cosmetic issue."  *Id.*, p. 47.  Removal of a cyst that is not infected is not medically necessary.  *Id*.  He said that if a person has multiple cysts, it would be hard or impossible to remove them all.  *Id.*, p. 48.  The proper course of treatment is soap and water, and an oral antibiotic.  *Id.*, p. 49.  Dr. Sellinger said that draining a sebaceous cyst can make it worse, and it is sometimes better to remove it.  *Id.*, p. 49.  Dr. Sellinger reviewed Plaintiff's medical records, and he was of the opinion that the medical treatment he received for sebaceous cysts was appropriate.  *Id.*, p. 50.

Dr. Sellinger said that genital herpes simplex is a virus that resides permanently in the nerve roots.  *Id.*, p. 50.  An outbreak, which involves blisters, typically last 7 to 10 days.  *Id*.  There is no known cure, and there is no required treatment.  *Id.*, p. 51.  There is no substantial risk of harm to a person if herpes is left untreated.  *Id.*, p. 54.  He said that a herpes outbreak does not require prompt medical attention.  *Id.*, p. 51.  If there is

no medical attention, the outbreak runs its natural course, and the blisters heal. *Id.* Within 7 to 10 days, there is no longer any visible evidence of the outbreak. *Id.*

Dr. Sellinger said that Valtrex is an anti-viral medication that decreases the intensity and duration of the symptoms of a herpes outbreak. *Id.*, p. 52. It does not cure the condition. *Id.* To be most effective, Valtrex must be taken at the very beginning of the outbreak. *Id.* Dr. Sellinger also said that Valtrex given once a day can be used to decrease the number of outbreaks over a period. *Id.*, p. 58. Reduction of stress levels can also help reduce the number of outbreaks. *Id.*

Dr. Sellinger said that the first herpes outbreak is always the worst, and the outbreaks diminish in severity with time. *Id.*, p. 53. He said he thought that a person who had had herpes for 20 years would only have one outbreak per year. *Id.* The outbreak should not be very severe. *Id.* Dr. Sellinger reviewed Plaintiff's medical records, and he was of the opinion that the medical treatment he received for herpes outbreaks was appropriate. *Id.*, p. 54.

**Conclusions of Law**

The Eighth Amendment is not violated unless a Defendant has been deliberately indifferent to the Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A " 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977).

Medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). In Estelle, the prisoner received treatment for his back injury (bed rest, muscle relaxants and pain relievers), but complained that more diagnosis should have been done, such as an X-ray or other tests. The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.

Assuming without deciding that Plaintiff's experience of outbreaks of herpes may give rise to temporary serious medical needs, a proposition not at all free from doubt, the delay in receiving Valtrex in December, 2002, was not deliberate indifference to a serious medical need. While Valtrex would have lessened the symptoms, under the circumstances, no Defendant was deliberately indifferent to Plaintiff's discomfort.

Nor was the delay in the removal of the cyst in June, 2003, a violation of the Eighth Amendment. Plaintiff has not shown deliberate indifference to a serious medical need.

**Recommendation**

Accordingly, it is **RECOMMENDED** that the court adopt these findings of fact and conclusions of law and direct the Clerk to enter judgment in favor of Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on September 28, 2005.


                                    s/   William C. Sherrill, Jr.
                                    **WILLIAM C. SHERRILL, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**